Filed 4/30/14  Kouzine v. Countrywide Home Loans CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ANATOLI KOUZINE, | B249022 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC485902) |
| v. | |
| COUNTRYWIDE HOME LOANS, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Elizabeth Allen White, Judge.  Affirmed in part, reversed and remanded with directions.

Ronald D. Tym; The Law Offices of Uri Litvak and Uri Litvak for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton and Kerry W. Franich for Defendants and Respondents.

_____

This appeal arises from an action alleging wrongs by a loan broker and a bank in connection with a residential loan transaction.  The defendant bank filed a demurrer and conjoint motion for judgment on the pleadings which together addressed all of the causes of action in plaintiff's second amended complaint.  The trial court sustained the demurrer and granted the motion for judgment on the pleadings, without leave to amend.  Plaintiff appeals from the ensuing judgment of dismissal.  We reverse the judgment, and remand the case with directions to the trial court to deny the bank's motion for judgment on the pleadings as to plaintiff's cause of action alleging violation of the Unfair Competition Law (UCL; see Bus. & Prof. Code, § 17200 et seq.)  The trial court's order sustaining the bank's demurrer is affirmed.

## FACTS

As always in the context of reviewing a demurrer we treat the facts alleged in the operative pleading to be true.  (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125.)  We may also consider matters that are judicially noticed.  (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)  We review the granting of a motion for judgment on the pleadings in much the same fashion, treating as true all properly pleaded facts.  (*Soco West, Inc. v. California Environmental Protection Agency* (2013) 213 Cal.App.4th 1511, 1514.)  Examined in light of these rules, the facts in this case are as follows.

### *Background*

In 2005, plaintiff and appellant Anatoli Kouzine owned residential real property encumbered by a short-term construction loan with an interest rate of 5.5 percent per annum.  At that time, Kouzine's construction loan was about to mature, and he knew interest rates were "headed upwards," so he wanted to refinance into a long-term, fixed interest rate loan.  Kouzine had "substantial income" and a "very high credit score."  He was "qualified as a prime borrower."  But he was a Russian immigrant and not

2

proficient at reading English,[1] and did not have much experience in mortgage loan financing. Due to these factors, Kouzine engaged defendant Chandler Funding Group, Inc. (not a party to the current appeal) to act as his mortgage broker to assist him in understanding any loan financing and loan documents.[2]

Chandler arranged for Countrywide Home Loans, Inc. to make a loan to Kouzine. Based on a "Good Faith Estimate"[3] that Kouzine received from Countrywide in February 2006, and representations from Chandler (Latt) and Brian Whitcanack at Countrywide, Kouzine "was led to believe that he was going to receive" a 30-year, fixed interest rate loan from Countrywide, with an interest rate of between 1 to 2 percent per annum.[4] The representations by Chandler and Countrywide induced Kouzine to sign loan documents in March 2006.

---

[1]     Specifically, Kouzine alleged he understood English on a sixth grade level.

[2]     Sheldon Latt of the Chandler firm handled the loan transaction for Kouzine. In his operative pleading, Kouzine predominantly refers to "Chandler" as the actor in the role of loan broker. We follow Kouzine's lead, and our references to Chandler hereafter include acts and statements by Latt, who is not individually named as a defendant.

[3]     In general terms, a lender is required by law to provide a good faith estimate to a borrower which itemizes the fees and costs associated with a loan, e.g.., fees for property inspections, appraisals, title insurance and other like charges. Kouzine does not allege what information in the good faith estimate that he received led him to have any beliefs about the terms of any loan. A copy of the good faith estimate is attached to Kouzine's operative pleading. It shows closing costs totaling $4,441. It also shows an "interest rate" of "1.000%," with a "term of loan" of "30 years," and a total monthly loan payment of $7,949.59.

[4]     Kouzine's pleading does not explain how — accepting as true the pleaded fact that he knew interest rates were "headed upward" — it could be that he believed he was going to be able to replace his then-existing short-term 5.5 percent interest rate loan with a 30-year fixed interest rate loan at 1 to 2 percent.

3

### The Loan Documents and Loan History

Kouzine signed a "Uniform Residential Loan Application"[5] for a $2.1 million loan. The loan application was prepared by Brian Witcanack of Countrywide. The first section of the loan application signed by Kouzine described the "TYPE OF MORTGAGE AND TERMS OF LOAN" for which Kouzine was applying. Within this section, a fill-in-the-blanks line reads as follows:

| Interest Rate 2.000% | No. of Months 360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☐ Other ☒ NCARM MTA 1mo Intro PO 1yr HPP |
| --- | --- | --- | --- | --- |

In March 2006, Kouzine signed a promissory note[6] and deed of trust. Kouzine also signed an "Adjustable Rate Rider" to the deed of trust. The rider document indicated that it was amending and supplementing the deed of trust given to secure an "Adjustable Rate Note" signed by Kouzine. In the middle of the first page of the rider document, the following language was printed in bold-face, all capital letters: "THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE

---

[5]     The Uniform Residential Loan Application was a standard form of "Freddie Mac," the Federal Home Loan Mortgage Corporation.

[6]     Kouzine's operative pleading cites an Exhibit C as the promissory note, but the attached documents are plainly a note related to a prior loan transaction, and not the note for his March 2006 loan from Countrywide. Other documents (e.g., Exhibit E) that are attached to Kouzine's operative pleading, and which plainly do relate to the March 2006 Countrywide loan, refer to an "adjustable rate note." Kouzine has not attached any such adjustable rate note in his operative pleading.

MONTHLY PAYMENT CAN INCREASE OR DECREASE. . . ." The text of the rider document included a provision reading as follows: "The interest rate I pay may change on the first day of May, 2006, and on that day every month thereafter. . . . ."

Kouzine also received a "Truth in Lending Disclosure Statement" around the time he signed the loan documents. The disclosure statement set forth the following schedule of monthly payments:

| No. of Payments | Amount of Payments | Payments are due monthly beginning |
|---|---|---|
| 12 | $7,762.01 | May 1, 2006 |
| 12 | $8,344.00 | May 1, 2007 |
| 12 | $8,969.00 | May 1, 2008 |
| 12 | $9,642.00 | May 1, 2009 |
| 7 | $10,365.00 | May 1, 2010 |
| 18 | $18,332.00 | December 1, 2010 |
| 1 | $18,331.00 | April 1, 2036[7] |

At the time Kouzine signed and received the various loan documents, he relied on *Chandler*'s oral representations as to what the loan documents stated. *Chandler* told Kouzine that he was receiving a fixed interest rate loan.

---

**[7]** Although many of the loan documents from Kouzine's March 2006 loan are attached to his pleading as exhibits, there is no copy of the Truth in Lending Disclosure Statement attached as an exhibit. The payment figures stated here are from the text of Kouzine's pleading. Either the disclosure statement contained an error, or Kouzine has incorrectly stated the payment figures that from the disclosure statement, because the payment figures do not show 360 payments.

5

As indicated on the face of the loan documents summarized above, the loan that Kouzine actually received from Countrywide had a higher initial interest rate than the one to two percent that he had been promised, and had included an adjustable, variable interest rate, rather than the fixed interest rate that he had been promised.

Chandler (Latt) "acted in concert" with Countrywide in arranging and making the loan actually made to Kouzine. Countrywide knew that Kouzine was executing loan documents under the belief that he was receiving a loan with a two percent fixed interest rate. Countrywide profited from the loan that it actually made to Kouzine because it was able to sell the loan, which was an "above market rate loan," in the secondary market at a premium.

The interest rate on the loan actually made to Kouzine changed after one month, but his monthly loan payment stayed the same for one year, with negative amortization. Because the monthly payment did not change, Kouzine had no knowledge that his loan's interest rate had changed.

In March 2007, Kouzine learned (from whom is not alleged) that his monthly loan payment was about to increase. Kouzine made inquiries (to whom is not alleged) why his monthly loan payments were increasing. Both defendants Chandler (Latt) and Bank of America (Whitcanack and Pamela Constantino), a successor of defendant Countrywide, told Kouzine that the payment change was due to the need for a larger escrow for taxes and insurance, and because the loan was amortizing more quickly than 30 years and the increased payments were going toward a quicker reduction of principal.

### The Litigation

"By virtue of Defendants' concealment and representations to [Kouzine, he], could not and did not discover Defendants' actions until 2009." In May 2011, Kouzine retained attorneys to review the loan documents that he executed and received in March 2006.

6

In June 2012, Kouzine commenced his current action against defendants Bank of America (nee Countrywide),[8] Chandler and others. Kouzine's operative pleading is his second amended complaint filed in January 2013. Kouzine's second amended complaint alleged five causes of action against The Bank, listed respectively, as follows: rescission of his loan contract on the ground of fraud in the inducement; fraud; violation of Civil Code section 2923.1 based on breach of fiduciary duty; violation of the UCL; and tortious breach of the implied covenant of good faith and fair dealing. The Bank filed a joint demurrer and motion for judgment on the pleadings. The Bank's demurrer attacked the sufficiency of all of Kouzine's causes of action except for his cause of action alleging violation of the UCL; The Bank's motion for judgment on the pleadings challenged Kouzine's cause of action under the UCL.[9]

At a hearing on March 8, 2013, the trial court entered a five-page minute order sustaining The Bank's demurrer and granting its motion for judgment on the pleadings. On April 3, 2013, the court entered a formal order on the demurrer and motion for judgment on the pleadings, including an order of dismissal.

Kouzine filed a timely notice of appeal.

## DISCUSSION

### I. Loan Origination — Rescission, Fraud, and Breach of Fiduciary Duty

Kouzine contends the trial court erred in ruling that his causes of action for rescission based on fraud in the inducement, fraud, and breach of fiduciary duty were barred by the statute of limitations. His arguments on appeal as to each cause of action are premised on the discovery rule employed in determining the date of accrual of a cause of action. He does not argue on appeal that the running of the limitations period, once

---

[8] We hereafter refer to Countrywide and Bank of America collectively as The Bank.

[9] Earlier, the trial court had overruled a demurrer to Kouzine's UCL cause of action. An order overruling a demurrer does not necessarily bar a subsequent motion for judgment on the pleadings on the same grounds. (See, e.g., *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389, fn. 3; *Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 877.)

triggered by the accrual of his causes of action, was tolled for any length of time. We find no error in the trial court's ruling.

### a. Rescission based on Fraud in the Inducement

It is undisputed that Kouzine and The Bank entered their loan contract in March 2006. The trial court ruled that Kouzine's cause of action against The Bank for rescission of their loan contract based on fraud in the inducement accrued on the date of the loan's inception. The court reached this conclusion because the terms of the loan documents were "inconsistent on their face" with the loan that Kouzine had been promised. In other words, the court ruled that Kouzine knew or should have known, as a matter of law, at the time he signed the loan documents that he did not receive the fixed interest rate loan that he had had been promised. In support of its conclusion, the court cited the long-standing cardinal rule of contract law that a party's failure to read a contract before signing it is no defense to the contract's enforcement. (See *Desert Outdoors Advertising v. Superior Court* (2011) 196 Cal.App.4th 866, 872 and cases cited therein.) On appeal, Kouzine argues this is incorrect because he was "tricked" at the time he signed the loan documents as to what those documents stated.[10]

Kouzine's argument may have legs as to his claims against his own loan broker, Chandler, but not as to The Bank on his claim for rescission. Kouzine's argument does not support a ruling that his cause of action against The Bank for rescission of their loan contract may ultimately be found — as a disputed factual issue — to have been delayed to a date after the date that he signed the loan contract documents.

It is undisputed that the loan contract between Kouzine and The Bank which he seeks to undo by his claim for rescission was created by the loan documents he signed, and Kouzine did not allege that The Bank misrepresented what those loan documents

---

[10] Kouzine's first argument is that the prescribed statute of limitations under Code of Civil Procedure section 337(3) for a cause of action for rescission based on fraud in the inducement is four years, not three years as stated by the trial court. The Bank agrees a four year limitations period governs, and so do we. Thus, we address the issues raised on appeal in light of a four-year, not three-year, statute of limitations.

stated. Instead, Paragraphs 28, 29 and 30 of Kouzine's operative pleading exclusively allege that Chandler misrepresented what the loan documents stated. Accordingly, whatever other claims that Kouzine may have against The Bank, their loan contract is what it is for purposes of its rescission, i.e, for undoing the loan contract in total and returning the parties to their pre-contract positions. Stated in other words, regardless of what The Bank told Kouzine about what he "was going to get," he got something quite different in the end. Kouzine has essentially alleged a species of bait and switch fraud as to The Bank; he did not allege that The Bank misrepresented the substance of the switched loan product that it actually delivered to Kouzine.

Given this pleading context, and assuming that Kouzine stated a cause of action against The Bank for rescission of their loan contract based on a claim of fraud in the inducement, the cause of action had to accrue as a matter of law on the date the loan documents were signed, i.e., on the date he got a loan product that was not what he had been promised by The Bank. This must be true as a matter of law as to The Bank, for purposes of the undoing of the loan contract, because the face of the loan documents showed as to The Bank that Kouzine did not get the loan that The Bank had promised him. Because the loan documents on their face show the loan that Kouzine actually got, his bait and switch type claim as to the Bank accrued on the date he got a "switched" loan product. The allegation that Chandler hid the true nature of the loan from Kouzine does not mean as to The Bank that Kouzine stated a cause of action for getting out their loan contract that did not accrue until he discovered Chandler's actions. The focus of the statute of limitations as to The Bank must be based on Kouzine's allegations concerning The Bank.

It cannot be factually disputed that Kouzine began to suffer measurable financial injury from The Bank's alleged fraud immediately upon the issuance of Kouzine's loan because interest on the principal began being incurred at a considerably higher rate than the two percent fixed rate which he alleged he had been promised. Further, he immediately became subject to a variable rate of interest, rather than a fixed interest rate.

9

All of the elements of Kouzine's cause of action for rescission based on fraud — wrongdoing and damages — were in place in March 2006. Thus, the limitations period began running. (See *Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1192.) Kouzine filed his action against The Bank in June 2012. Kouzine's operative complaint, on its face, shows that his cause of action for rescission based on was time-barred under the applicable four-year statute of limitations unless he pleaded sufficient facts to invoke the benefit of delayed accrual under the discovery rule.

"'A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence. . . . [Citations.]'" (*E-Fab, Inc. v. Accountants, Inc*. (2007) 153 Cal.App.4th 1308, 1319.) Mere conclusory averments of a date of discovery are not sufficient; a plaintiff must plead facts showing the time and manner of discovery in order that a court may determine whether or not the discovery was made at the time alleged. (*Hobart v. Hobart Estate Co*. (1945) 26 Cal.2d 412, 442-443.) Also, plaintiffs must plead facts showing an inability to make earlier discovery because the discovery rule only delays accrual of a cause of action "'until the plaintiff discovers, or has reason to discover, the cause of action. . . . [Citations.] [¶] Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them.'" (*Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1431, quoting *Fox v. Ethicon Endo-Surgery, Inc*. (2005) 35 Cal.4th 797, 806-807; and see e.g., *McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 108 [when a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation].)

We agree with The Bank that Kouzine's second amended complaint alleges little more than an isolated conclusory statement to the effect that he "did not discover [The Bank's] actions until 2009." There are no facts stating the circumstances of discovery. We also agree with The Bank that Kouzine's second amended complaint does not allege facts explaining why he could not have discovered The Bank's possible bait and switch wrongdoing earlier than 2009. The only fact alleged in this regard is that, in March 2007, he asked The Bank and Chandler why his monthly loan payment was being increased. This single alleged fact is not sufficient to show that his cause of action for rescission against The Bank did not accrue in March 2006.

Further, we agree with the trial court's alternative ruling that Kouzine's cause of action for rescission accrued, if not in March 2006, then no later than March 2007, when he learned that his monthly loan payment was being increased. In this vein, even if we indulged that Kouzine was excused from even the most cursory, rudimentary review of his loan documents in March 2006, such laxity cannot be indulged after March 2007. By his own judicial admission in his pleading, he knew that something was not in sync with the loan he thought he had obtained – his monthly loan payment was increasing. Indeed, Kouzine pleaded that his concern prompted him to make an inquiries of Chandler and The Bank. He was told that the loan was being amortized more quickly. This allegation is not grounds for further delaying accrual of his cause of action for rescission of his loan with The Bank. On the contrary, the statements that Kouzine allegedly heard in March 2007 are even stronger grounds for concluding as a matter of law that discovery occurred at that time. Any reasonable person would have or should have as a matter of law investigated further into whether he or she had a fixed interest rate loan as a change in the pace of amortization cannot be harmonized with a fixed rate loan. Further, it is inescapable as a matter of law that, had Kouzine conducted even a minimal investigation in March 2007, he would have learned that he did receive a fixed interest rate loan as he had allegedly been promised.

11

### b. Fraud

Kouzine contends the trial court erred in ruling that his second cause of action for fraud as to The Bank is barred by the statute of limitations. The statute of limitations is three years from the date of discovery of the fraud. (Code Civ. Proc., § 338, subd. (d).) At issue here is again the discovery rule for the date of accrual of a cause of action as to The Bank. For all of the reasons explained above, we reject Kouzine's discovery rule arguments as to his cause of action for fraud as well. As to The Bank, Kouzine should have discovered his fraud claim — he did not get the loan he had been promised — as a matter of law upon signing the loan documents in March 2006 or in March 2007 when he was told that his loan was amortizing more quickly than before.

### c. Breach of Fiduciary Duty

Kouzine also contends the trial court erred in ruling that his third cause of action for breach of fiduciary duty is barred by the statute of limitations. Again, the issue is the discovery rule for the date of accrual of a cause of action. We find no error.

Kouzine asserts that that the catch-all, four-year statute of limitations prescribed by Code of Civil Procedure section 343 applies. Section 343 provides: "An action for relief no hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." Assuming without deciding that Kouzine can state a cause of action against The Bank, a lender, for breach of fiduciary duty based on acts before the January 2013 effective date of the California Homeowner Bill of Rights ("Homeowner Bill")[11] (see *Nymark v. Heart Fed. Savings & Loan Assn.* (1991) 231 Cal.App.3d 1089, 1093, fn. 1 [relationship between a lender and borrower is not fiduciary in nature]; and see also *Price v. Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 476 [accord]; *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 984 [accord]; and *Downey v. Humphreys* (1951) 102 Cal.App.2d 323, 332 ["A debt is not a trust and there is not a fiduciary duty relation between debtor and creditor as such."]), we reject Kouzine's arguments that the

---

[11]     We discuss the Homeowner Bill more extensively below.

trial court erred in finding his fiduciary duty cause of action time-barred. For the reasons explained above, we find Kouzine's cause of action for breach of fiduciary duty as to The Bank accrued in March 2006, or, alternatively, no later than March 2007. And, he may not invoke the discovery rule as to The Bank because he did not allege facts showing when and how he discovered facts of The Bank's alleged breach of fiduciary duty, or why he could not have discovered the breach earlier than 2009.

## II.    Loan Foreclosure — The UCL

Kouzine next contends the trial court erred in ruling that his fourth cause of action as to The Bank for relief under the UCL failed because he lacked standing. Specifically, Kouzine argues the court erred in ruling that he did not allege that he suffered injury in fact caused by an unfair or unlawful business practice of The Bank within the limitations period. Kouzine's arguments implicate two elements – (1) injury in fact; and (2) the nature of his claim as to the Bank, and whether The Bank's alleged acts were beyond the statute of limitations. Further, Kouzine contends he should have been granted leave to amend to allege his UCL cause of action more plainly. We agree with Kouzine that leave to amend is appropriate in his case.

### a.  Trial Court Proceedings

Kouzine's cause of action for relief as to the Bank under the UCL alleged that The Bank engaged in "unfair" business practices within the meaning of the UCL in two ways. First, Kouzine reiterated his fraud in the inducement allegations, i.e., his claims regarding the origination of his loan in March 2006. Second, Kouzine alleged the Bank engaged in unfair[12] business practices "with respect to mortgage loan servicing, assignments of notes and deeds of trust, [and] foreclosure of residential properties . . . ." Within the sphere of the broadly identified area of loan foreclosure, Kouzine alleged that The Bank instituted "improper or premature foreclosure proceedings to generate unwarranted fees," executed

---

[12]    Kouzine's complaint actually used the work "deceptive," rather than unfair.

13

and recorded false and misleading documents, and executed and recorded documents without the legal authority to do so.

The Bank's motion for judgment on the pleadings challenged the sufficiency of Kouzine's cause of action under the UCL from two different directions. First, The Bank argued that Kouzine's claims related to the origination of his loan were time-barred. As to Kouzine's post-origination claims, The Bank claimed his allegations were no more than a "blind contest" to a lender's right to pursue foreclosure proceedings for which Kouzine lacked standing because he had not alleged that he suffered any injury in fact and that he lost money or property from such foreclosure proceedings. (See Bus. & Prof. Code, § 17204.) Specifically, the Bank argued Kouzine did not allege he had paid any "unwarranted fees" connected with mortgage servicing or a foreclosure, or that The Bank had actually foreclosed upon his property.

Kouzine's opposition did not address the legal merits of The Bank's challenges to his cause of action under the UCL. Instead, Kouzine argued procedurally that The Bank was improperly seeking reconsideration of a prior demurrer which the trial court had overruled. Further, Kouzine argued that a motion for judgment on the pleadings did not lie because there had not been a material change in the applicable law since the demurrer had been overruled. (Citing *Yancey v. Superior Court* (1994) 28 Cal.App.4th 558, 562.)[13]

The trial court granted The Bank's motion for judgment on the pleading for the following stated reason: "[Kouzine] does not allege that he suffered an injury in fact as a result of any alleged unfair or unlawful business practices which are not time-barred (i.e., related to origination of the loan). As such, [Kouzine] does not have standing to bring a [UCL] cause of action."

_____

[13] The record before us on appeal, an appellant's appendix prepared by Kouzine, does not contain a copy of The Bank's demurrer to Kouzine's first amended complaint, nor a copy of the trial court's ruling on the demurrer. However, there are indications in the record on appeal that The Bank did not raise a UCL standing argument in its prior demurrer.

14

### b.  Injury in Fact Standing

In November 2004, California voters passed Proposition 64, amending Business and Professions Code section 17204 to limit standing under the UCL.  (See *Troyk v. Farmers Group, Inc*. (2009) 171 Cal.App.4th 1305, 1335.)  Under section 17204, a cause of action for violation of the UCL "shall be prosecuted exclusively . . . by the Attorney General or a district attorney or by a county counsel . . . or by a city attorney . . . or *by a person who has suffered injury in fact and has lost money or property as a result of the [alleged] unfair competition*."  (Italics added.)

To the extent Kouzine's UCL claim is premised on alleged wrongs at the time of loan origination, we agree that he has alleged injury within the meaning of section 17204 in that he incurred higher interest rate payments.  Accordingly, as to claims associated with loan origination, standing is not an issue.  The issue as to loan origination wrongs is the bar of the statute of limitations.  For the reasons explained above, we find as to The Bank that UCL claims associated with loan origination are time-barred because Kouzine knew or should have known of claims as to The Bank in March 2006 or March 2007 at the latest.

Kouzine's more developed argument on appeal is that the trial court did not recognize that his cause of action under the UCL is not only based on alleged wrongdoing by The Bank at the origination stage of his loan, but is also based on alleged wrongdoing by The Bank much later, i.e., in association with its foreclosure practices. Kouzine argues on appeal that his operative pleading included allegations that The Bank engaged in the practice of "dual tracking" -- considering Kouzine for a loan modification while at the same time moving forward with foreclosure proceedings.[14]  Kouzine argues that such a practice may be considered to be an "unfair" business practice within the

---

[14]    The paragraphs that Kouzine points to in his second amended complaint to support his "dual tracking" theory are not in his UCL claim; they are found in his cause of action for breach of the covenant to good faith and fair dealing.

meaning of the UCL, and that, at a minimum, he should be granted leave to amend to allege more plainly that his UCL claim is based on a dual tracking theory.

Kouzine observes that the Legislature enacted the Homeowner's Bill in July 2012, and that it bans dual tracking. (See *Singh v. Bank of America, N.A.* (E.D. Cal. May 2, 2013, No. 2:13-cv-00729-MCE-AC) 2013 WL 1858436 [not reported in F.Supp.2d].) Kouzine forthrightly acknowledges he "did not directly" plead a violation of the Homeowner's Bill by name or statutory provision in his UCL claim, or anywhere else in his second amended complaint. Instead, he argues that even before the Homeowner's Bill was enacted, our state had long-required lenders and loan servicers to deal fairly with borrowers in home loan agreements as a matter of public policy. Kouzine argues the trial court should have granted him leave to allege his dual tracking theory more clearly as an unfair business practice in violation of such public policy.

Given the focus of Kouzine's arguments on appeal, the first issue we must address is whether he alleged sufficient facts to show that he suffered injury in fact and lost money or property as a result of The Bank's alleged unfair dual tracking practices to establish standing under the UCL. (Bus. & Prof. Code, § 17204.) And, if not, whether he showed or has shown on appeal a reasonable possibility that he will be able to allege facts for standing under the UCL. (see, e.g., *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967.) A bald allegation that a lender engaged in dual tracking, without facts alleging a plaintiff has suffered injury in fact and loss of money or property from the practice will not be sufficient under the UCL.

In *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, the Court of Appeal held that a plaintiff has standing under the UCL when he or she alleges a lender has commenced the foreclosure process. (*Id.* at p. 522.) Under *Jenkins*, the future potential loss of plaintiff's property is an injury in fact and loss of money or property within the meaning of Business and Professions Code section 17204. Kouzine's pleading alleges that a trustee sale was scheduled at some point. Specifically, Kouzine's operative second amended complaint alleged a trustee sale was "scheduled for June 7, 2012."

16

The allegation concerning a scheduled trustee sale is confusing given that the second amended complaint was filed in January 2013. Also, Kouzine does not allege that the trustee sale in fact has occurred, or its current status. Despite the problems with the current state of Kouzine's pleadings, we are satisfied that there is a reasonable possibility he may be able to amend his allegations to state facts showing injury in fact related to a foreclosure of his loan with The Bank under *Jenkins*. Accordingly, we remand the case with directions to allow Kouzine another attempt to allege his UCL cause of action.

### c. UCL Cause of Action based on Dual Tracking

This brings us to the issue whether a reasonable possibility that he will be able allege injury in fact *as a result of an unfair business practice as defined under the UCL.* In other words, may dual tracking allegations support a UCL cause of action. Although Kouzine has not offered any amended pleading language in his opening brief on appeal, we are satisfied by his argument that a cause of action under the UCL may, in theory, be based on alleged dual-tracking. Accordingly, we find it appropriate to allow him an opportunity to attempt to allege such a claim.

Neither party questions that the Homeowner's Bill is not retroactive, and that the law will not save Kouzine's UCL cause of action unless he can allege a violation of the Bill after the date it became effective. This still leaves the further issue whether Kouzine may nonetheless be able, without invoking the Homeowner's Bill, to state a claim under the UCL based on dual tracking allegations.

In *Jolley v. Chase Home Finance* (2013) 213 Cal.App.4th 872 (*Jolley*), Division Two of the First District Court of Appeal reversed a summary judgment in favor of a lender in an action attempting to state a claim under the UCL based on dual tracking. The court acknowledged that the provisions of the Homeowner's Bill do not apply to a case where a homeowner faced foreclosure before its effective date. However, the court ruled that a plaintiff may be able to state a cause of action under the UCL based on dual tracking even when the conduct occurred before the effective date of the law. The court reasoned that, while dual tracking was not forbidden by statute prior to the Homeowner

17

Bill, "the new legislation and its legislative history may still contribute to its being considered 'unfair' for purposes of the UCL." (*Id*. at pp. 907-908.) *Jolley* thus supports the proposition that a UCL claim based on an unfair business practice need not be tethered to a specific existing constitutional, statutory or regulatory provision, but may be based on established public policy that a certain business practice is unfair in a moral or ethical sense. Further, that legislation and legislative history may be used as *evidence* of a public policy existing before the legislation was enacted. *Jolley* essentially ruled that a lender's practice of dual tracking may be found to satisfy these criteria.

We are satisfied that, under *Jolley*, Kouzine may be able to state a cause of action for violation of the UCL based on a dual tracking theory. Presently, Kouzine's cause of action under the UCL is insufficient (see footnote 13, *ante*), but we find it a reasonable possibility that he will be able to submit an amended pleading correcting the defects in his pleadings. Kouzine, of course, will need to allege as to The Bank that it engaged in the practice of dual tracking as to him, and that he suffered injury in fact from such dual tracking. Further, that The Bank's actions occurred within the applicable limitations period.

In the final analysis, it appears that the trial court's decision to grant judgment on the pleadings was based on its understanding that Kouzine's UCL cause of action relied on his loan origination claims, and that, to that extent, his UCL claim was time-barred. The trial court's perspective is understandable given some of the holes in Kouzine's operative pleading, but we have been satisfied by Kouzine's arguments on appeal that there is a reasonable possibility that he will be able to amend his pleadings to allege facts stating a cause of action under the UCL premised on actions which occurred long after the time of loan origination, i.e., in connection with foreclosure. Such claims, if properly alleged, would not necessarily be time-barred.

18

**III.    Loan Foreclosure — Breach of the Covenant of Good Faith and Fair Dealing**

Kouzine next contends the trial court erred in ruling that his fifth cause of action for tortious breach of the implied covenant of good faith and fair dealing was lacking. Kouzine argues he alleged sufficient facts to show that The Bank breached its duty to act fairly in that it engaged in dual tracking in connection with the parties' loan contract. Kouzine argues that, even before the effective date of the Homeowner's Bill, the public policy of California deemed dual tracking to be outside the bounds of fair dealing by lenders and loan servicers, supporting a claim in tort for breach of the implied covenant of good faith and fair dealing. We find no error.

Every contract in California imposes upon the parties a duty of good faith in its performance. This implied covenant of good faith and fair dealing assures "compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated in the contract." (*Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1032.) In this vein, the implied covenant of good faith and fair dealing cannot be invoked to prohibit a contracting party from doing something that the parties' contract expressly allows the party to do. (See *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc*. (1992) 2 Cal.4th 342, 374.) And, of course, outside the insured-insurer relationship and other relationships with similar qualities, breach of the implied covenant of good faith and fair dealing ordinarily does not give rise to a claim for tort damages. (See, e.g., *Ragland v. U.S. Bank National Assn*. (2012) 209 Cal.App.4th 182, 206.)

There is no dispute in Kouzine's current case that his loan contract with The Bank expressly granted The Bank the contract right to pursue foreclosure. The issue presented by Kouzine's attempt to allege a cause of action for tortious breach of the covenant of good faith and fair dealing is whether, prior to the effective date of the Homeowner's Bill, all loan contracts included an implied obligation recognized by law, imposing on lenders and or loan servicers, a duty to refrain from dual tracking during the foreclosure process, and, if so, whether a breach of that duty would give rise to a claim in tort.

19

Kouzine's reliance on *Jolley, supra,* 213 Cal.App.4th 872 in support of his argument that he stated a claim for tortious breach of the implied covenant of good faith and fair dealing is not persuasive. In *Jolley*, the plaintiff took a construction loan from Washington Mutual Bank (WaMu). WaMu thereafter allegedly failed to disburse the construction loan funds properly. As the plaintiff was working with WaMu on the situation, WaMu went into FDIC receivership. Later, the FDIC transferred WaMu's assets to Chase Home Finance. When the plaintiff stopped making payments on the original loan, Chase moved to foreclose. Plaintiff filed suit, alleging causes of action for fraud, negligence, breach of contract/promissory estoppel and related claims. There was no claim for breach of the implied covenant of good faith and fair dealing. (*Id.* at pp. 878-881.) The trial court granted a motion for summary judgment in favor of Chase.

One of the primary issues on appeal was whether Chase assumed liability for WaMu's conduct under the asset purchase agreement between the FDIC and Chase. Any discussion on this issue is not helpful to Kouzine in this current case. Kouzine cites to a statement in *Jolley* that recognized a "rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification." (*Jolley, supra*, 213 Cal.App.4th at p. 903.) We find this generality unhelpful to Kouzine's current appeal. The Court of Appeal's statement was no more than its recognition that federal and state legislation in recent years reflects significant changes in lending laws. *Jolley* does not address whether, prior to the enactment of the Homeowner's Bill, lenders were under an implied contractual obligation to refrain from dual tracking which would support a claim in tort. That the Homeowner's Bill made dual tracking unlawful tends to suggest in our view that, prior to the law's enactment, the practice of dual tracking during foreclosure was not precluded by contractual provision implied by law. For these reasons, we are not persuaded that we should find Kouzine stated a cause of action for tortious breach of the implied covenant of good faith and fair dealing based on the alleged act of dual tracking. While we have determined that Kouzine should be granted leave to attempt to allege a claim that dual tracking is an

20

unfair business practice under the UCL, does not mean that dual tracking is a breach of a loan contract.

## DISPOSITION

The judgment of dismissal entered April 3, 2013 is reversed, as is the trial court's order granting The Bank's motion for judgment on the pleadings as to Kouzine's cause of action for violation of the UCL, without leave to amend. The case is remanded to the trial court with direction to enter a new and different order granting The Bank's motion for judgment on the pleadings, with leave to amend. The trial court's underlying order sustaining The Bank's demurrer is affirmed. Each party to bear its own costs on appeal.


                                        BIGELOW, P. J.

We concur:


        RUBIN, J.


        FLIER, J.


21