[No. C061842. Third Dist. Nov. 10, 2010.]

JANE DOE, Plaintiff and Appellant, v.
ROMAN CATHOLIC BISHOP OF SACRAMENTO, Defendant and
Respondent.

**COUNSEL**

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Elizabeth N. Niemi; The Law Offices of Joseph C. George, Joseph C. George and Joseph C. George, Jr., for Plaintiff and Appellant.

Sweeney & Greene, James F. Sweeney, Stephen J. Greene, Jr., and Laura Borden Riddell for Defendant and Respondent.

**OPINION**

**NICHOLSON, Acting P. J.**—Two priests employed by defendant Roman Catholic Bishop of Sacramento (the Diocese) molested two young sons of plaintiff Jane Doe and other children about 20 or more years ago. The two priests fled the country—one in 1989, after pleading guilty to child molestation charges unrelated to Doe's sons, and the other in 1991, after being accused by another family of child molestation.

In 2008, Doe sued the Diocese, alleging that she suffered damages as a result of the priests' molestation of her sons. She asserted causes of action for fraud and negligence.[1] However, the trial court sustained the Diocese's demurrer to the complaint because, among other reasons, Doe's action was barred by the statute of limitations.

Doe appeals. On the issue of the statute of limitations, she contends that the trial court erred in sustaining the demurrer because, under the discovery rule, her causes of action against the Diocese did not accrue until 2007, when her sons told her about the molestations. We conclude that Doe had a duty of inquiry, under the circumstances as alleged in her complaint, when the priests fled the country. Therefore, her causes of action, even assuming without deciding that they have substantive merit, accrued almost 20 years ago and are now barred by the statute of limitations.

Accordingly, we affirm.

### PROCEDURE

*Complaint*

"Because this case comes before us on appeal from a judgment sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the

---

[1] Doe's sons have their own action against the Diocese.

reasonable inferences that may be drawn from those facts. [Citations.]" (*Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 883 [80 Cal.Rptr.3d 690, 188 P.3d 629].)

In 1989, Doe went to work for the Diocese and, at the time of the filing of the complaint, had been an employee of the Diocese for nearly 20 years. She is a devout Catholic who was taught to admire, trust, revere, respect, and obey the church's clergy. She is an uneducated Mexican immigrant and single mother of 10 children, divorced from a man to whom she was married when she was 15 years old.

Jose Luis Urbina and Gerardo Beltran were priests in Doe's parish, which is part of the Diocese. Beltran was also her employer. Both priests gave Doe spiritual and secular counseling. Urbina had counseled Doe to divorce her husband and had driven her to the attorney's office to file for divorce. Urbina and Beltran visited Doe's home regularly and functioned as surrogate fathers to Doe's children.

The complaint does not state when Doe and her children began associating with the Diocese, but it mentions that, in 1984, Doe was counseled by Urbina to divorce her husband.

The Diocese knew or should have known that Urbina and Beltran were pedophiles and child molesters. However, the Diocese did not tell any of the parishioners at Doe's parish. Instead of disclosing this information to the parishioners, the Diocese, by holding Urbina and Beltran out as respected priests, "affirmatively represented" to the parishioners that Urbina and Beltran had no history of child molestation and were not a danger to children. Doe believed and relied on these "misrepresentations."

Two of Doe's sons were molested by Urbina and Beltran. Because of the Diocese's "misrepresentations," Doe gave Urbina and Beltran unsupervised access to her sons. (The complaint does not say when the molestations occurred.)

In June 1989, Urbina pled guilty to molesting another minor parishioner, but he fled the country before sentencing. The majority of the parishioners believed he was falsely accused.

In late 1991, Beltran also fled the country after being accused of child molestation. The "overwhelming majority" of parishioners believed that Beltran's accusers were lying. Doe "could not believe that her priests would commit such horrific acts."

The Diocese never informed Doe that the accusations against Urbina and Beltran were credible. Instead, the Diocese "remained silent in order to foster the mistaken idealization of [Urbina and Beltran] by the parishioners and allow it to go uncorrected and to crystallize, thereby perpetuating the shame of sex abuse victims and ensuring their silence."

The complaint alleged: "Had [Doe] known what [the Diocese] knew—that the priests supposedly caring for her and her family and providing secular counseling were in fact pedophiles and a danger to her children—her sons would not have been molested and she would not have suffered her injuries alleged herein."

Doe discovered the abuse of her sons in April 2007 when they told her they had been molested by Urbina and Beltran. She later learned that Urbina and Beltran had, in fact, molested other children before molesting her sons.

The complaint alleged four causes of action: (1) fraud, (2) fraudulent concealment or intentional nondisclosure, (3) negligence, and (4) negligent retention or supervision and failure to warn.

The injuries to Doe were alleged as follows:

"[Doe] lost the services of her sons and her relationships with her sons were adversely affected as a result of [the Diocese's] conduct. [Doe's] children suffered individual and relationship problems as a result of [the Diocese's] conduct. As a parent who was responsible for any needs of her children while they were minors, including but not limited to legal, psychiatric or academic, [Doe] was a foreseeable victim of the [Diocese's] failure to manage the priests' conduct and to warn parents of their crimes. Further, [Doe] was unable to get timely psychiatric care for her children, which resulted in serious irreparable psychological damages to her sons, which continue to exist.

"[Doe] has suffered psychological and emotional injury and harm caused by [the Diocese] and [its] conduct, including long-term psychological injuries, which have developed and occurred, and will in the future continue to develop and occur in [Doe], all to [Doe's] general damages in a sum to be proven.

"[Doe] has suffered physical, mental and emotional health problems as a result of which she has had to employ, and will in the future continue to have to employ, medical and mental health professionals for diagnosis and treatment and has incurred and will in the future continue to incur expenses therefore, in a sum as yet unascertained."

*Demurrer and Ruling*

The Diocese demurred to Doe's complaint. The demurrer stated two grounds, generally, for demurring as to all four causes of action—each cause of action (1) was barred by the statute of limitations and (2) failed to state facts sufficient to constitute a cause of action. In addition, as to each of the two fraud-related causes of action, the Diocese asserted that the cause of action was (1) uncertain and (2) not pled with specificity.

After a hearing, the trial court sustained the demurrer without leave to amend. The court ruled that (1) all causes of action are time-barred, and the discovery rule did not delay accrual of the causes of action because, when Urbina and Beltran fled the country because of molestation of children, Doe had a duty of inquiry concerning whether her sons had been molested; (2) Doe cannot recover emotional and psychological damages from injuries to other persons because she was not present and aware of the molestations when they happened; (3) assignment of priests to specific parishes is not an "affirmative representation" that they are not child molesters; and (4) the complaint failed to plead fraud with sufficient specificity.

Having sustained the Diocese's demurrer without leave to amend, the trial court entered judgment in favor of the Diocese.

## DISCUSSION

Doe asserts her action is not barred by the statute of limitations. We conclude that Doe's action is barred because her reliance on the discovery rule to delay accrual of the causes of action is misplaced. Given our conclusion that the action is barred by the statute of limitations, we need not address the other bases upon which the trial court relied in sustaining the demurrer without leave to amend.

*The Statute of Limitations on Demurrer*

 " 'A demurrer based on a statute of limitations will not lie where the action may be, but is not necessarily, barred. [Citation.] In order for the bar . . . to be raised by demurrer, the defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred. [Citation.]' [Citation.]" (*Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 781 [129 Cal.Rptr.2d 107, 60 P.3d 692], quoted in *Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42 [105 Cal.Rptr.3d 181, 224 P.3d 920].)

█ The limitations period for a fraud cause of action is three years from accrual. (Code Civ. Proc., § 338, subd. (d).) However, "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (*Ibid.*) This discovery element has been interpreted to mean "the discovery by the aggrieved party of the fraud *or* facts that would lead a reasonably prudent person to *suspect* fraud. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [191 Cal.Rptr. 619, 663 P.2d 177] . . . .)" (*Debro v. Los Angeles Raiders* (2001) 92 Cal.App.4th 940, 950 [112 Cal.Rptr.2d 329], original italics.)

█ At the time of the alleged injuries, more than 20 years ago, the limitations period for a negligence cause of action was one year from accrual. In 2002, the limitations period for negligence was changed to two years from accrual.[2] (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 809 & fn. 3 [27 Cal.Rptr.3d 661, 110 P.3d 914] (*Fox*).) As with a fraud cause of action, the discovery rule also applies to delay accrual of a negligence cause of action. (*Id.* at pp. 808–809.)

█ "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox, supra*, 35 Cal.4th at p. 808, original italics.)

### *Policy Behind Statutes of Limitations*

" 'Statute of limitations' is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action. [Citations.] There are several policies underlying such statutes. One purpose is to give defendants reasonable repose, thereby protecting parties from 'defending stale claims, where factual obscurity through the loss of time, memory or supporting documentation may present unfair handicaps.' [Citations.] A statute of limitations also stimulates plaintiffs to pursue their claims diligently. [Citations.] A countervailing factor, of course, is the policy favoring disposition of cases on the merits rather than on procedural grounds. [Citations.]

---

[2] The parties make no argument concerning whether the one-year or two-year limitations period applies in this case. We need not decide the issue because, even if the applicable period is two years from accrual, that period expired long before Doe filed her complaint.

■ "A plaintiff must bring a claim within the limitations period after accrual of the cause of action. (Code Civ. Proc., § 312 ['Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued']; [citation].) In other words, statutes of limitation do not begin to run until a cause of action accrues. [Citation.]" (*Fox, supra*, 35 Cal.4th at p. 806.)

### *The Discovery Rule*

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' [Citations.] An important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action. [Citations.]

■ "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] [The Supreme Court] explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm. [Citation.] In so using the term 'elements,' [the Supreme Court does] not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." (*Fox, supra*, 35 Cal.4th at pp. 806–807.)

"The discovery rule only delays accrual until the plaintiff has, or should have, inquiry notice of the cause of action. The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] *on inquiry*' " ' or if they have ' " '*the opportunity to obtain knowledge* from sources open to [their] investigation.' " ' [Citation.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox, supra*, 35 Cal.4th at pp. 807–808, fn. omitted, original italics.)

### *Fraud Causes of Action*

Doe filed her complaint many years after her sons were molested. Recognizing this, Doe contends that her fraud causes of action are timely because

she did not learn of the molestations until April 2007. She further contends that she was not on inquiry notice before she gained actual knowledge of the molestations.

Doe bases her delayed discovery argument on the fact that she did not know about the molestation of her sons until within three years of the filing of her complaint. However, the circumstances of nearly 20 years ago, known to Doe, prompted a duty to investigate whether her sons had been molested. Doe knew that Urbina and Beltran had considerable unsupervised access to her sons. Thereafter, Urbina fled the country in 1989, having pled guilty to child molestation charges. Beltran fled the country in 1991, accused of child molestation. After her sons' molestations, they suffered individual and relationship problems, including with Doe, and she lost their "services." These facts, which appear on the face of the complaint, taken together, constituted " ' " 'information of circumstances' " ' " sufficient to " ' " 'put [Doe] on inquiry.' " ' " (*Fox, supra*, 35 Cal.4th at pp. 807–808, italics omitted.) Doe was "required to conduct a reasonable investigation after becoming aware of an injury" and therefore was "charged with knowledge of the information that would have been revealed by such an investigation." (*Id.* at p. 808.)

Doe makes several arguments against the conclusion that she was put on inquiry nearly 20 years before she filed the complaint. She claims (1) her sons may not have told her of the molestations if she asked, (2) the Diocese misrepresented the facts to her, (3) she did not discover the molestation of her sons until April 2007, and (4) the complaint does not establish that she knew that Urbina and Beltran fled the country because of their molestation of children. Each claim fails to persuade us that she was not put on inquiry nearly 20 years earlier.

Doe claims that she should be excused from having investigated nearly 20 years ago because an investigation might not have revealed the abuse. In support of this, she claims generally that there are "volumes of literature on child sexual abuse" suggesting that "mortification, self-blame, fear, guilt, shame or a combination of these and other emotions common to victims of sexual abuse—not to mention the influence of cultural taboos, especially in the Mexican-American community—would lead the boys to tell their mother that nothing had happened." This claim misconstrues the duty to investigate. Doe was not under a duty to discover, merely to investigate diligently. If she had diligently investigated nearly 20 years ago, she would have satisfied her duty to investigate, regardless of whether other forces, such as her sons' emotional state, may or may not have prevented her from gaining actual knowledge of the molestation. If she had diligently investigated, she could

now show that diligent investigation did not reveal the molestation, rather than simply speculating that might be so. Because she did not diligently investigate—she did not investigate at all—she cannot now rebut the presumptive knowledge she had nearly 20 years ago of the abuse. (See *Fox, supra*, 35 Cal.4th at pp. 807–808.)

As noted above, "[t]he discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have ' " 'information of circumstances to put [them] *on inquiry*' " ' or if they have ' " '*the opportunity to obtain knowledge* from sources open to [their] investigation.' " ' [Citation.]" (*Fox, supra*, 35 Cal.4th at pp. 807–808, fn. omitted, original italics.)

■ Furthermore, neither the Diocese's alleged misrepresentations nor Doe's actual ignorance of the molestations relieved Doe of the duty to investigate. Misrepresentations are a part of every fraud cause of action; nonetheless, the duty to investigate arises if the circumstances indicate that the defendant's representations may have been false. (*Vai v. Bank of America* (1961) 56 Cal.2d 329, 343 [15 Cal.Rptr. 71, 364 P.2d 247].) Here, Doe alleges that the Diocese represented that Urbina and Beltran were not child molesters. The circumstances, however, cast serious doubt on those representations, to the extent that Doe cannot now simply allege that the Diocese misrepresented the facts. " '[D]iscovery is different from knowledge, [so] that where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge.' [Citation.]" (*Ibid.*) Even taking as true the allegations that the Diocese misrepresented the facts and that Doe did not know about the molestations until April 2007, Doe had a duty to investigate nearly 20 years before she filed the complaint. At that point, the fraud causes of action accrued.

Equally unavailing is Doe's assertion the complaint does not establish she knew that Urbina and Beltran fled the country because of their molestation of children. On appeal, Doe argues that "[t]he complaint does not allege that she knew [at the time the priests fled] of the molestation charges against the priests." It is true that the complaint does not plead that she knew why the priests fled, but the only reasonable interpretation of the complaint as a whole is that she knew. (See *Fox, supra*, 35 Cal.4th at p. 810 [we give complaint reasonable interpretation].)

Doe alleged that she was associated with the Diocese for more than 20 years. She was employed by the Diocese for nearly 20 years, in the parish where Urbina and Beltran were employed. Urbina was her counselor, and

Beltran was her counselor and employer. Urbina pled guilty to child molestation charges, then fled the country. Beltran fled under accusation of child molestation. Both priests had unsupervised access to Doe's sons. The majority of parishioners believed that the priests were falsely accused. This attitude was "widespread" in the parish. The complaint alleged that "[Doe] could not believe that her priests would commit such horrific acts." She shared the belief that the priests were falsely accused.

No reasonable person could conclude from these alleged facts that Doe did not know, nearly 20 years ago, why Urbina and Beltran fled the country. She was closely associated with the parish and, especially, the specific priests. The reason for the priests' flight was well known. She, herself, did not believe the accusations. Therefore, her argument that she did not know why Urbina and Beltran fled fails.

■ Doe has not carried her burden to establish, through adequate pleading, that the fraud causes of action did not accrue nearly 20 years ago. She has failed to show diligence in investigating her claims; therefore, she has not rebutted the presumption that she knew of the cause of her injuries when it occurred. (*Fox, supra*, 35 Cal.4th at pp. 807–808.) The trial court did not err in sustaining the demurrer as to those causes of action.

### Negligence Causes of Action

Concerning her negligence causes of action, Doe repeats her assertion that the discovery rule delayed accrual of her causes of action until she actually knew that her sons had been molested. This assertion is without merit for the reasons already discussed.

Doe additionally asserts, however, that "the Diocese was negligent toward *her*, and her claims are controlled by when *she, herself, became aware* that her rights and interests had been harmed—*i.e.*, when she learned for the first time that her sons had been molested." (Original italics.) For this proposition, Doe offers no authority. The point is therefore forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] [appellant forfeits any point not supported by reasoned argument and citations to authority].) In any event, the actions giving rise to Doe's negligence causes of action occurred about two decades ago. As discussed above, she is charged with presumptive knowledge of the injury when it occurred and has failed to rebut the presumption by application of the discovery rule. (*Fox, supra*, 35 Cal.4th at pp. 807–808.)

## DISPOSITION

The judgment is affirmed. The Diocese is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

Robie, J., and Cantil-Sakauye, J., concurred.