Filed 6/22/15  Marriage of Schessler CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of TERESA and JOSEPH SCHESSLER. | B254152 |
| | (Los Angeles County Super. Ct. No. VD063295) |
| TERESA SCHESSLER, | |
| Respondent, | |
| v. | |
| JOSEPH SCHESSLER, | |
| Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charles Q. Clay III, Judge.  Affirmed.

Joseph Schessler, in pro. per., for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

_____

Joseph Schessler appeals from the denial of his motion to set aside the stipulated judgment on reserved issues entered in his marital dissolution action. Joseph,[1] who is currently in prison and was incarcerated, and thus not present, when the hearing on the stipulated judgment occurred, contends his attorney was not authorized to agree to the terms of the stipulated judgment. Because substantial evidence supports the trial court's finding the motion was untimely, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Stipulated Judgment of Dissolution*

Teresa and Joseph separated in December 2006 after almost 13 years of marriage; they had one son, Steven, born in September 2000. In January 2007 Teresa petitioned for dissolution of the marriage. In April 2007 Joseph was arrested in connection with the 1989 murder of his stepmother. On November 9, 2007 the family law court entered a judgment dissolving the marriage and retaining jurisdiction over all other matters. (Fam. Code, § 2337, subd. (a).)[2] In June 2008 Joseph was convicted of first degree, special circumstances murder and was sentenced to a state prison term of life without the possibility of parole.

On April 1, 2009 Teresa, her attorney, Kathleen Fitzgerald, and Joseph's attorney, Diana Delker, signed a stipulated judgment on reserved issues (Judicial Council Forms, form FL-180 and an attachment, entitled "Attachment 4j to Judgment," setting forth the terms). The judgment awarded Teresa sole legal and physical custody of Steven and gave her sole discretion to determine visitation. It also divided Joseph and Teresa's community property, essentially awarding each of them the items in their possession or held in their name alone. Delker signed the stipulated judgment both as attorney for

---

[1]    As is customary in family law matters, we refer to the parties by their first names for convenience and clarity. (See *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1466, fn. 1.)

[2]    Statutory references are to this code unless otherwise indicated.

2

Joseph and on behalf of Joseph. Next to her signature above Joseph's name on the last page of Attachment 4j, Delker wrote "power of attorney for."

At the outset of the family law hearing on April 1, 2009, Fitzgerald informed the court, "[W]e have a full stipulation, a stipulated judgment. However, because of Mr. Schessler's current situation, his attorney is signing, under power of attorney. And I would like to voir dire my client on the record and have Ms. Delker explain to the court the full power to sign on behalf of her client." Delker subsequently explained, "We have some monies in trust from the sale of the home, in which I was actually given proper legal power of attorney for my client, which I still maintain, which we can use for this case, as well as for signing over the judgment and releasing the rest of those monies."

Judgment on reserved issues was entered the same day, with the court retaining jurisdiction to enter appropriate orders with respect to Joseph's retirement fund. Notice of entry of judgment (Judicial Council Forms, form FL-190) was also filed on April 1, 2009.

2. *The Motion To Set Aside the Stipulated Judgment*

On March 26, 2012 Joseph, representing himself, moved to set aside the stipulated judgment as void, alleging Delker had not been authorized to agree to its terms. Joseph argued the power of attorney he gave Delker was limited to acts involving his and Teresa's home and automatically terminated 90 days after its effective date of April 28, 2008, several months prior to the date the stipulated judgment was signed.[3] Joseph's dissatisfaction with the stipulated judgment included Delker's failure to secure visitation rights or any form of contact with Steven. He also insisted some of the property awarded to Teresa was his separate property.

In a declaration Joseph explained he had not filed the motion until almost three years after the judgment was entered because Delker had failed to send him the

---

[3] The power of attorney stated that Joseph appointed Delker "as my true and lawful attorney-in-fact . . . to act for me any in my name, place and stead to do any of the following but *only* with respect to transactions involving the Real Property" defined as Teresa and Joseph's home.

3

documents. He contended he had received the "Notice of Entry of Judgment, Attachment 4j" for the first time in April 2011 after his sister obtained a copy from Delker. In August 2011 Joseph obtained a copy of his criminal attorney's file, which included a copy of the power of attorney he had signed. Joseph asserted, "Upon review of said document, I realized that Delker's Power of Attorney was limited to the funds from the proceeds of the sale of my home." He also contended he had not been given time to read the document when he signed it and could not communicate with Delker because she was in another room.

On June 1, 2011 Joseph filed a complaint against Delker with the State Bar of California.[4] The State Bar declined to prosecute Delker for possible violation of the State Bar Act or California Rules of Professional Conduct. In an August 31, 2011 letter, which Joseph attached as an exhibit to his declaration in support of the motion to set aside the judgment, an attorney for the State Bar reported that Delker had responded to Joseph's complaint and explained that "[s]he was given authority and full written permission to handle and discuss all matters with your sister Cindy [Liggett]. This was because Cindy was attempting to gain guardianship over your son, and [Delker] also assisted the family in the guardianship matter, by helping them obtain counsel. [¶] During the process of the criminal trial and family law matters, her main contact for you was Cindy. You were often difficult to have regular contact with as you were transferred numerous times in jail and transferred to Delano State Prison . . . with limited telephone access. . . . [Delker] believes the family law courts were unsympathetic to you and during a chambers conference with her opposing counsel, the court let it be known it had no patience or sympathy for your personal property issues. The court's[] main concern was finding funding for the minor child. The judge made it clear all property judgments would be decided in favor of the mother to care for the minor child. The judge also made it clear

---

4       On August 23, 2012 Joseph sued Delker in Orange County Superior Court alleging causes of action for fraud, breach of contract, breach of fiduciary duty and professional negligence based on her execution of the stipulated judgment without his knowledge or consent. The lawsuit is scheduled for trial later this year.

that he would not grant any visitation orders in favor of you; and gave the mother complete discretion on whether the minor would have any contact with you in prison. . . . [¶] All agreements were fully discussed and agreed upon with you directly and/or with Cindy."

For her part, Delker asserted she had written Joseph soon after the stipulated judgment was entered and thereafter mailed him copies of all documents. Delker later heard from Cindy that Joseph said he had not received the documents, so Delker provided them to Cindy. Based upon its evaluation of the information provided in response to Joseph's complaint, the State Bar concluded it could not prove Delker violated her ethical obligations and closed the file.

On May 24, 2013, after a series of delays,[5] the trial court held an evidentiary hearing on the motion to set aside the stipulated judgment. However, because Joseph had not received copies of Teresa's response to the motion, the court agreed to allow him an opportunity to reply before ruling. On November 12, 2013, after Joseph had filed a 33-page reply with more than 80 pages of exhibits, the court denied the motion, finding, "[Joseph] failed to meet his burden of showing that the court had any legal authority to consider his claims, that his requests were not barred by the statute of limitations, or of producing credible, admissible evidence sufficient to support his belated claim that the judgment is void and should be set aside."

3. *The Appeal*

Joseph filed a timely notice of appeal. In light of Joseph's indigent and self-represented status, to assist with review of the issues on appeal, this court ordered transcripts prepared of the hearings on April 1, 2009 on the proposed stipulated judgment and May 24, 2013 on the motion to set aside the judgment. We also obtained the complete trial court file because the record on appeal is incomplete (for example, it does not include Teresa's opposition to the set-aside motion or supporting declarations). (See

---

5    At the outset of the hearing the trial court acknowledged there had been "various and sundry oversights by this court and other delays and some procedural delays."

generally *Hotels Nevada LLC v. L.A. Pacific Center, Inc.* (2012) 203 Cal.App.4th 336, 348 [it is appellant's duty to provide adequate record on appeal; failure to do so requires issue be resolved against appellant].)  Although a self-represented litigant is not excused from complying with the procedural rules governing appropriate appellate practice (see *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984 ["mere self-representation is not a ground for exceptionally lenient treatment"]), whenever possible, we do not strictly apply technical rules of procedure in a manner that deprives litigants of a hearing.  (Cf. *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, 432 ["we carefully examine a trial court order finally resolving a lawsuit without permitting the case to proceed to a trial on the merits"].)

## DISCUSSION

1. *Standard of Review*

We review for abuse of discretion a trial court's refusal to set aside a judgment under Family Code section 2122.  (*In re Marriage of Brewer & Federici* (2001) 93 Cal.App.4th 1334, 1346.)  "[T]he showing on appeal is wholly insufficient if it presents a state of facts . . . which . . . merely affords an opportunity for a difference of opinion.  An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."  (*Brown v. Newby* (1940) 39 Cal.App.2d 615, 618.)  "The trial court's exercise of discretion must be guided, however, by fixed legal principles, and must 'be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.'"  (*In re Marriage of Varner* (1997) 55 Cal.App.4th 128, 138.)  "A trial court abuses its discretion when it applies the wrong legal standard or its factual findings are not supported by substantial evidence."  (*Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4th 1214, 1224.)

2. *Substantial Evidence Supports the Trial Court's Finding the Motion To Set Aside the Judgment Was Untimely*

    a. *Section 2122 specifies the exclusive grounds and time limits for the motion*

Historically judgments in family law cases, like civil cases generally, were subject to challenge pursuant to Code of Civil Procedure section 473. (See *In re Marriage of Varner, supra*, 55 Cal.App.4th at pp. 138-140; *In re Marriage of Heggie* (2002) 99 Cal.App.4th 28, 32.) In 1992 the Legislature enacted separate provisions specifying the requirements to set aside a dissolution judgment as part of the Civil Code, which were reenacted as a chapter entitled "Relief from Judgment" in the new Family Code the following year. (§§ 2120-2129; Stats.1993, ch. 219, § 108, pp. 1615-1617; see *Kuehn v. Kuehn* (2000) 85 Cal.App.4th 824, 830; *In re Marriage of Varner*, at p. 136.) The current statutory scheme authorizes an action or motion to set aside a dissolution judgment on specific grounds (§ 2121, subd. (a)),[6] including "actual fraud" (§ 2122, subd. (a)).

When, as here, relief is sought more than six months after the judgment or appealable order was entered, "[s]ection 2122 specifies the exclusive grounds and time limits for an action or motion to set aside a marital dissolution judgment." (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684; accord, *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 87.) "Actual fraud" within the meaning of section 2122, subdivision (a), occurs when "the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding." A motion to set aside based on actual fraud must be brought "within one year after the date on which the complaining party either did discover, or should have discovered, the fraud." (§ 2122, subd. (a).)

---

6    Section 2121, subdivision (a), states, "In proceedings for dissolution of marriage . . . the court may, on any terms that may be just, relieve a spouse from a judgment, or any part or parts thereof, adjudicating support or division of property, after the six-month time limit of Section 473 of the Code of Civil Procedure has run, based on the grounds, and within the time limits, provided in this chapter."

b. *The one-year limitations period began running no later than August 2010*

Joseph contends the trial court erred in ruling his motion was untimely because he did not discover the judgment had been based on Delker's fraudulent use of his power of attorney until August 28, 2011—seven months before he filed the motion—when he finally reviewed a copy of the power of attorney and realized, because it was limited in scope and time, it did not authorize Delker to sign the stipulated judgment on his behalf.[7] The date Joseph claims he finally understood Delker had committed fraud, however, does not trigger the running of the limitations period. "[T]he statute of limitations under section 2122 accrues as of the date the plaintiff either discovered or should have discovered *the facts constituting the fraud . . . .*" (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1149 (*Rubenstein*).) Section 2122, subdivision (a)'s delayed discovery rule is identical in effect to the requirements of the parallel provision in Code

---

[7] In his lawsuit against Delker in Orange County Superior Court, Joseph alleged he first became aware of Delker's fraud in April 2011, not late August 2011 as he asserted in this proceeding. Based on that allegation Delker demurred to the complaint, which was not filed until August 23, 2012, contending it was barred by Code of Civil Procedure section 340.6, subdivision (a), which requires most actions against an attorney for a wrongful act or omission to be filed within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission. In his opposition to the demurrer Joseph argued the gravamen of his complaint was Delker's actual fraud and, as such, it was governed by the three-years-from-discovery limitations period in Code of Civil Procedure section 338, subdivision (d)—an express exception to section 340.6's one year limitations period. He also asserted, pursuant to Code of Civil Procedure sections 352.1, subdivision (a), and 340.6, subdivision (a)(4), the time for commencement of his action against Delker was tolled for at least two years because he was under a legal disability (his imprisonment on criminal charges) that restricted his ability to commence the action when the claims accrued. Delker's demurrer was overruled. (See generally *Favila v. Katten Muchin Rosenman, LLP* (2010) 188 Cal.App.4th 189, 224 [""'[a] demurrer on the ground of the bar of the statute of limitations will not lie where the action may be, but is not necessarily barred"'"].)

8

of Civil Procedure section 338, subdivision (d) (see *Rubenstein*, at p. 1149),[8] which charges plaintiffs with "presumptive knowledge of an injury if they have ""'information of circumstances to put [them] *on inquiry*'"' or if they have ""'*the opportunity to obtain knowledge* from sources open to [their] investigation.'"' [Citation.] In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation." (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807-808, fn. omitted.) As the Supreme Court explained in *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1111, "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." Phrased somewhat differently, "under the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause, unless the plaintiff pleads and proves that a reasonable investigation at that time would not have revealed a factual basis for that particular cause of action." (*Fox*, at p. 803; see *Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1433 [""'"[d]iscovery is different from knowledge, [so] that where a party defrauded has received information of facts which should put him upon inquiry, and the inquiry if made would disclose the fraud, he will be charged with a discovery as of the time the inquiry would have given him knowledge"'"'].)

Although the trial court did not explain the basis for its conclusion Joseph's motion was untimely, we presume on appeal all factual findings necessary to support the judgment and defer to them if they are supported by substantial evidence. (See *Gately v. Cloverdale Unified School Dist.* (2007) 156 Cal.App.4th 487, 496; *Fladeboe v. American*

---

8    Code of Civil Procedure section 338, subdivision (d), provides, "An action for relief on the ground of fraud or mistake . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

*Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.)[9] Here, substantial evidence supports the implied finding the limitations period began running no later than August 1, 2010 and thus Joseph's motion filed on March 26, 2012 was untimely.

In an August 1, 2010 letter to Joseph, his sister Cindy wrote, "I did get a reply back from Diana Delker. She apologized for not getting you the paperwork and said that she will do so. I offered to meet her somewhere and pick it up if that is easier for her. [¶] She also said she has about $600 in an account for you. She wanted to know if you would like her to send money for your account." Moreover, in one of his declarations Joseph asserted the last time Teresa had permitted Steven to visit him was in December 2007 and Teresa had refused to let Joseph's family see Steven since February 2008. It is a reasonable inference from this evidence that Joseph knew by August 1, 2010 that judgment had been entered on the reserved issues in the dissolution proceedings (the paperwork Delker had for Joseph), the judgment did not provide for any visitation with Steven, and a property division had been effected that was not in accordance with Joseph's direction to Delker regarding his separate property. Whether Joseph, who had signed the power of attorney, did not recall or fully understand it was limited to disposition of the family home is beside the point: As of August 1, 2010 Joseph had at least constructive or inquiry notice the matter had been resolved in an unfavorable manner, in conflict with his instructions to his attorney regarding visitation and his separate property rights. At that point he had an obligation to conduct a reasonable investigation, including obtaining the documents from the court directly. He could not wait for the facts to come to him. Because Joseph did not file his motion within one year of August 1, 2010, the trial court properly denied it as untimely.

---

9    Although Teresa did not file a respondent's brief on appeal, she argued in the trial court that Joseph was charged with constructive knowledge of the stipulated judgment long before he claims to have first seen it (that is, in April 2011).

## DISPOSITION

The order is affirmed.  Because respondent Teresa Schessler did not participate in the appeal, no costs are awarded.


PERLUSS, P. J.


We concur:


ZELON, J.


STROBEL, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.