Filed 8/21/25  An v. American Franchise Regional Center CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ZIXUAN AN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>AMERICAN FRANCHISE REGIONAL CENTER, LLC et al,<br><br>    Defendants and Respondents. | B338133<br><br>(Los Angeles County Super. Ct. No. 23AHCV01622) |

APPEAL from a judgment of the Superior Court of Los Angeles County, William A. Crowfoot, Judge.  Affirmed.

Ardent Law Group and Hubert Kuo for Plaintiff and Appellant.

Bezdik Kassab Law Group and Raffi Kassabian; Grammatico Law Firm and Paul A. Grammatico for Defendants and Respondents.

_____

Zixuan An appeals from a judgment of dismissal entered after the trial court sustained without leave to amend the demurrer filed by American Franchise Regional Center, LLC (American Franchise), Americana Hesperia Retirement Funding LLC (Americana Hesperia), and Agnes Sinclair, also known as Agnes Yen (Yen) (collectively the Americana defendants), to An's complaint for breach of contract, fraud, and related causes of action. On appeal, An does not dispute the court's finding each of his claims was barred by the applicable statute of limitations. Instead, An contends he can amend his complaint to adequately plead facts demonstrating that under the delayed discovery rule his causes of action were timely filed. Even accepting the allegations in An's proposed amended complaint as true, however, his claims are barred by the applicable statutes of limitations. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Americana Defendants' Project and An's Investment*

American Franchise is a participant in the United States Citizenship and Immigration Service's (USCIS) EB-5 immigrant investor program, which provides United States visas to qualified immigrants who invest at least $500,000 in approved job-creating projects.[1] As a participant in the program, American Franchise "'connect[s] foreign investors with developers in need of funding.'" Yen is the owner and manager of American Franchise.

---

[1] We accept as true all facts properly pleaded in An's complaint and proposed amended complaint to determine whether he can plead facts sufficient to establish his claims are not time barred. (See *Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 279-280.)

2

Americana Hesperia was created by American Franchise to work on the EB-5 immigration visa program.

American Franchise submitted plans to USCIS for a "multi-faceted senior care facility" to be located on an approximately 200,000-square-foot property in Hesperia, California (the project). The project would consist of "four businesses: an adult day care, wellness services, medical/health services and assisted living facility." The project required $83 million in capital and would be funded in part by a $42 million dollar loan from Americana Hesperia, which would raise those funds from individual EB-5 visa applicants.

During 2015 and 2016, Yen and attorney John Deyong Hu, on behalf of American Franchise and Americana Hesperia, held "[i]mmigration [s]eminars in various cities in China" to promote the project to potential investors. Yen and Hu told potential investors that Americana Hesperia owned the land on which the senior care facility would be built and the land was worth approximately $22 million. They explained the project had "minimal risk" because, "even if this multi-faceted senior care [project] should later fail, the investors could still recover back their investment monies" by selling the land.

In their presentations in China and in the written business plan provided to potential investors, the Americana defendants outlined the following timeline for the project: they would (1) receive a conditional use permit by August 28, 2015; (2) receive building permits by March 2017; (3) begin construction in April 2017; (4) complete construction by June 2019; (5) obtain a business license by December 2019; and (6) begin official operation of the project by January 2020.

An attended one of the seminars in China and, based on the representations made by Hu and Yen at the seminar and in the Americana defendants' business plan, An agreed to invest $500,000 in the project in exchange for a one-unit membership in Americana Hesperia and assistance in filing his application for an EB-5 visa. In August 2016 An signed the subscription agreement and paid $500,000 to the Americana defendants.[2]

B.  *The Project's Delays*

On July 28, 2017 Yen sent an email to all investors in the project stating that "the project had been delayed, and that they were hoping to obtain all construction permits" by December 31, 2018. Further, "they would keep all investors updated of the [p]roject's status." However, as of March 2020, construction had not begun on the project.

After conducting "additional investigation," An discovered the land on which the project was to be built was not worth $22 million as had been represented and instead was worth only $660,000. In addition, the Americana defendants did not own the land at the time An made his investment; rather, they purchased the land in 2017 from a company owned by Hu's wife.

C.  *The Complaint and the Demurrer*

An filed this action on July 14, 2023, alleging causes of action against the Americana defendants for breach of contract, rescission, fraud, intentional misrepresentation, negligent

---

[2]     An also entered into an "Attorney-Client Fee Agreement" with Hu and his law firm, Hu & Associates, LLC, pursuant to which Hu would provide legal services to assist An and his family in obtaining EB-5 visas.

4

misrepresentation, conspiracy to commit fraud, conversion, breach of fiduciary duty, constructive fraud, unfair business practices (Bus. & Prof. Code, § 17200 et seq.), and an accounting.[3]

On or about October 6, 2023 the Americana defendants filed a demurrer to the complaint, arguing An failed to state claims for relief and the statutes of limitations barred all causes of action. The Americana defendants argued the statutes of limitations began to run when An received notice in 2017 that the project was delayed. An did not oppose the demurrer. Instead, on January 18, 2024, the day before the hearing on the demurrer and after the deadline to oppose the demurrer or file an amended complaint had passed, An lodged an amended complaint.

The trial court sustained the demurrer without leave to amend.[4] The court found An's claim accrued when he learned in 2017 that the Americana defendants had not received construction permits and the project's completion date would be

---

[3]     The caption page of the complaint also lists a cause of action for violation of the Corporations Code, but there is no allegation under the Corporation Code in the body of the complaint. The complaint also named as defendants Hu, his law firm, his wife, and the company Hu's wife owned. Those defendants are not parties to this appeal.

[4]     On our own motion we take judicial notice of the January 19, 2024 minute order. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) It is not clear from the record whether the trial court considered An's untimely amended complaint as a request for leave to amend or whether An's attorney requested leave to amend at the hearing on the demurrer. There was no court reporter at the hearing, and the record does not contain a settled statement or agreed statement of the hearing. (Cal. Rules of Court, rules 8.130(h), 8.137, 8.836.)

delayed. The court entered a judgment of dismissal of the Americana defendants on January 30, 2024. On April 5, 2024 An filed a timely notice of appeal.

D.    *The Motion for Leave To Amend*

On February 6, 2024 An filed a motion for leave to amend the complaint. In a declaration filed in support of the motion, An's attorney stated he had intended to file the amended complaint by the due date in early January 2024, but he contracted a serious virus in December 2023 that caused congestive heart failure. As a result, he inadvertently missed the deadline for filing the amended complaint.

At the April 15, 2024 hearing on the motion for leave to amend the complaint, the trial court held it lacked jurisdiction to consider the motion. The court explained the notice of appeal filed on April 5, 2024 "stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby." (Code Civ. Proc., § 916, subd. (a).) Thus, the court found, "to consider [the motion for leave to amend] would require the Court to consider whether to relieve Plaintiff of the same order that is currently pending on appeal." The court denied the motion for leave to amend, and An did not appeal that order.

**DISCUSSION**

A.    *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Matthews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v.*

6

*Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)
When evaluating the complaint, "we assume the truth of the
allegations." (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204,
209; accord, *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) "'"'We
treat the demurrer as admitting all material facts properly
pleaded, but not contentions, deductions or conclusions of fact or
law.'"'" (*Centinela Freeman Emergency Medical Associates v.
Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.)

"'Where the complaint is defective, "[i]n the furtherance of
justice great liberality should be exercised in permitting a
plaintiff to amend his [or her] complaint."'" (*Aubry v. Tri-City
Hospital Dist.* (1992) 2 Cal.4th 962, 970-971.) A plaintiff may
demonstrate for the first time to the reviewing court how a
complaint can be amended to cure the defect. (Code Civ. Proc.,
§ 472c, subd. (a) ["[w]hen any court makes an order sustaining a
demurrer without leave to amend the question as to whether or
not such court abused its discretion in making such an order is
open on appeal even though no request to amend such pleading
was made"]; see *Sierra Palms Homeowners Assn. v. Metro Gold
Line Foothill Extension Construction Authority* (2018)
19 Cal.App.5th 1127, 1132 [plaintiff may for the first time on
appeal meet its burden of proving an amendment would cure a
legal defect].)

B.     *The Delayed Discovery Rule*
       Traditionally, a claim accrues "'"when [it] is complete with
all of its elements"—those elements being wrongdoing, harm, and
causation.'" (*Aryeh v. Canon Business Solutions, Inc.* (2013)
55 Cal.4th 1185, 1191; accord, *Howard Jarvis Taxpayers Assn. v.
City of La Habra* (2001) 25 Cal.4th 809, 815.) "This is [known as]
the 'last element' accrual rule . . . ." (*Aryeh*, at p. 1191; see *ibid.*

7

["ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action'"]; *Howard Jarvis*, at p. 815 [same].)

An exception to the general rule of accrual is the delayed discovery rule, "which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Fox v. Ethicon Endo–Surgery, Inc.* (2005) 35 Cal.4th 797, 807 (*Fox*); accord, *Quarry v. Doe I* (2012) 53 Cal.4th 945, 960.) "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her." (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110 (*Jolly*).) In other words, the limitations period begins "'once the plaintiff has notice or information of circumstances to put a reasonable person on inquiry. [Citation.] Subjective suspicion is not required. If a person becomes aware of facts which would make a reasonably prudent person suspicious, he or she has a duty to investigate further and is charged with knowledge of matters which would have been revealed by such an investigation.'" (*McCoy v. Gustafson* (2009) 180 Cal.App.4th 56, 108; accord *Fox*, at pp. 807-808 ["plaintiffs are charged with presumptive knowledge of an injury if they have ""information of circumstances to put [them] on *inquiry*"" or if they have ""*the opportunity to obtain knowledge* from sources open to [their] investigation."""" (Fn. omitted.)].)

"Thus, a two-part analysis is used to assess when a claim has accrued under the discovery rule. The initial step focuses on whether the plaintiff possessed information that would cause a reasonable person to inquire into the cause of his [or her] injuries. Under California law, this inquiry duty arises when the

8

plaintiff becomes aware of facts that would cause a reasonably prudent person to suspect his [or her] injuries were the result of wrongdoing.  [Citation.]  If the plaintiff was in possession of such facts, thereby triggering his [or her] duty to investigate, it must next be determined whether 'such an investigation would have disclosed a factual basis for a cause of action.'" (*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1251.)  "A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights.  So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly*, *supra*, 44 Cal.3d at p. 1111; accord, *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 398 [once on inquiry notice the plaintiff "must indeed seek to learn the facts necessary to bring the cause of action in the first place"].)

To defeat a demurrer by relying on the delayed discovery rule, a plaintiff "'must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'  [Citation.]  In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'" (*Fox, supra*, 35 Cal.4th at p. 808; accord, *Investors Equity Life Holding Co. v. Schmidt* (2011) 195 Cal.App.4th 1519, 1533 ["the burden of pleading and proving belated discovery of a cause of action falls on the plaintiff"].)

The determination of when a plaintiff reasonably should have discovered wrongdoing for purposes of the accrual of a cause

9

of action or application of the delayed discovery rule is generally a question of fact, but it is properly decided as a matter of law if the evidence (or, in this case, the allegations in the proposed amended complaint) can support only one "legitimate inference." (*Jolly, supra*, 44 Cal.3d at p. 1112 [trial court properly granted summary judgment to defendants where as a matter of law statute of limitations barred action]; accord, *Broberg v. The Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 921 [application of delayed discovery rule can only be decided on demurrer if allegations in the complaint "can support only one reasonable conclusion"].)

C.     *An Has Not Demonstrated He Can Amend His Complaint To Invoke the Delayed Discovery Rule*

1.     *The proposed amended complaint*

The proposed amended complaint included additional allegations regarding communications between An and the Americana defendants after the 2017 email informing investors of the delay.  An alleged that after learning of the delay in 2017, he "reached out to Defendant Yen directly.  From July 28, 2017 throughout to at least in mid-2022, Defendant YEN, on behalf of herself and Defendants AMERICAN FRANCHISE and AMERICANA HESPERIA, sent several emails to Plaintiff assuring him that everything about the PROJECT was on track, and the investors, including Plaintiff, should not be worried about the PROJECT at all."  Later, "when the COVID-19 Pandemic struck, Defendant YEN . . . sent emails to Plaintiff explaining . . . the PROJECT would be delayed due to the Pandemic, but Defendant Yen assured Plaintiff that the

PROJECT would still be moving forward and that his immigration petition would not be delayed."

An relied on these representations and "believed in good faith that the PROJECT will be fine and the delays would not impact his investment and his EB-5 application" until An received a letter from USCIS in early August 2022 denying An's visa application. The letter stated that "'none of the [project's] business plans contain sufficient evidence to support the capital stock and timeline' and therefore the business plans 'are not credible.'" The letter also "took issue with the timeline" of the project, noting that no construction permits had been issued as of August 2022.

After receiving this letter An conducted "additional investigations" to discover the true value and owner of the property as of 2016, as he had alleged in his complaint. An alleged he "was unable to discover" the Americana defendants' wrongdoing prior to receiving the USCIS denial letter.

2. *An's causes of action are time-barred*

The statutes of limitations applicable to An's claims are two, three, and four years,[5] all of which would bar An's causes of

_____

[5] See Code Civ. Proc., § 337, subds. (a) & (c) (four-year statute of limitation for breach of contract and recission); § 338, subd. (d) (three years for actions grounded in fraud or mistake); § 338, subd. (c) (three years for conversion); § 339 (two years for negligent misrepresentation); Bus. & Prof. Code, § 17208 (four years for violation of Business & Professions Code); *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479 (three or four years for breach of fiduciary duty depending on whether the breach is fraudulent or nonfraudulent); *Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1026, fn. 3 (cause of action for an

11

action if they accrued in 2017 when An first learned of the project's delays. An argues he adequately pleaded facts demonstrating the applicability of the delayed discovery rule, and his causes of action did not accrue until he received the USCIS denial letter in 2022. His arguments are not persuasive.

An contends the 2017 email regarding delays in the project would not have put a reasonable person on notice of potential wrongdoing because "it is generally known that construction projects get delayed on occasion (or even frequently)."[6] While it may be true that construction projects often are behind schedule, the delay in this case was significant and does not excuse the failure to inquire. By the time Yen sent the email in July 2017 notifying investors that the project still did not have building permits, the project was already at least four months behind schedule (building permits were scheduled to be received in March 2017). Yen's email further stated building permits were anticipated to be received by December 2018— approximately 21 months after the original schedule. An does not allege that Yen gave any reason for the delay. Nor did Yen state whether the first deadline had been met—to obtain a conditional use permit by August 2015, which, if not obtained by July 2017, would have put the project three years behind. An also did not allege that Yen represented that any future deadlines could be

accounting adopts the statute of limitations for the underlying wrongdoing).

[6] An also argues he was reasonable in not inquiring about the delay because "the pandemic wreaked havoc on worldwide supply chains (especially in the construction sector)." However, when An first learned of the delays in mid-2017, and for almost three years thereafter, the pandemic had not yet started.

met, for example, that the project could still be completed by June 2019 by accelerating the project in some manner.

We agree with the Americana defendants that a reasonably prudent investor, having invested half a million dollars in a project, would be suspicious and, at the very least, inquire as to the reasons for an almost-two-year delay and would monitor the project closely to ensure progress was made.  (See *Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 179 [CEO had duty to investigate auditors' alleged wrongdoing when CEO discovered unpaid tax bill "because on an objective basis, all of these circumstances placed [CEO] on '"notice of facts sufficient to arouse the suspicions of a reasonable man"'"].)

An has not sufficiently alleged he did anything in response to Yen's emails and the continuing delay.  As discussed, An must demonstrate he can "'specifically plead facts to show . . . the inability to have made earlier discovery despite reasonable diligence.'"  (*Fox, supra,* 35 Cal.4th at p. 808.)  An "was not under a duty to discover [wrongdoing], [but] merely to investigate diligently."  (*Doe v. Roman Catholic Bishop of Sacramento* (2010) 189 Cal.App.4th 1423, 1432.)  The only allegations in the proposed amended complaint that An made any inquiries after learning of the delays in 2017 are the allegations he at some point "reached out to Defendant Yen directly."  This general allegation—lacking any specificity as to timing or content notwithstanding An's knowledge that the prior complaint did not allege sufficient facts on delayed discovery—is inadequate to show An diligently investigated.  (See *Grisham v. Philip Morris U.S.A., Inc.* (2007) 40 Cal.4th 623,638 ["'[i]n assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to "show diligence"; "conclusory

13

allegations will not withstand demurrer"'"]; accord, *Fox*, at p. 808.)

Nor do the generalized allegations of Yen's assurances excuse An's failure to investigate.  An alleged that between 2017 and 2022, Yen "sent several emails . . . assuring [An] that everything about the [project] was on track."  Not only do these allegations lack sufficient specificity, but also such assurances would not relieve An's duty to investigate in light of facts that would have reasonably aroused suspicion.  (See *NBCUniversal Media, LLC v. Superior Court* (2014) 225 Cal.App.4th 1222, 1236 [plaintiffs who suspected infringement had duty to inquire despite assurances by defendants]; *Doe v. Roman Catholic Bishop of Sacramento, supra*, 189 Cal.App.4th at p. 1433 [defendant's misrepresentations did not relieve plaintiff of duty to investigate where "circumstances . . . cast serious doubt on those representations"].)

An's additional arguments lack merit.  An contends Hu and his law firm were in a fiduciary relationship with An based on their receipt of An's money to invest in American Franchise, and therefore, the delayed discovery rule does not apply.  An does not explain how Hu's fiduciary obligations toward An would excuse An's lack of diligence in investigating representations by Yen made on behalf of the Americana defendants.  Moreover, although the existence of a fiduciary relationship eliminates the beneficiary's duty to conduct due diligence, the statute of limitations begins to run once "'the [putative plaintiff] has knowledge or notice of the act constituting a breach of fidelity.' [Citations.]  The existence of the fiduciary relationship . . . does not empower that plaintiff to "'sit idly by'" when ""facts sufficient to arouse the suspicions of a reasonable [person][ ]"'" "'come to his

14

[or her] attention.""" (*Ferguson v. Yaspan* (2014) 233 Cal.App.4th 676, 683; accord, *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 197, fn. 13.) Because the 2017 email revealing significant delays in the project would have aroused the suspicions of a reasonable person, An cannot rely on the alleged fiduciary relationship to excuse his failure to act in response to those suspicions.

Finally, An's reliance on the continuous accrual doctrine is misplaced. "Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: 'When an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.'" (*Aryeh v. Canon Business Solutions, Inc.*, *supra*, 55 Cal.4th at p. 1199.) "The kinds of cases in which the continuous accrual theory have been applied . . . include a variety of instances in which the plaintiff asserted a right to, or challenged the assessment of, periodic payments under contract or under California statutes or regulations." (*Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 379.)

An argues Yen "consistently made representations . . . that everything was moving forward," and each of those representations was an independently actionable wrong that triggered a new limitations period. But An's claims did not involve recurring obligations or periodic payments. Instead, each allegedly fraudulent statement arose out of a single transaction— An's investment in the project—and thus, the continuous accrual doctrine does not apply. (See *State of California ex rel. Metz v. CCC Information Services, Inc.* (2007) 149 Cal.App.4th 402, 418 [continuous accrual doctrine did not apply to action alleging false or misleading statements because the action did "not involve a

15

recurring obligation or any such periodic payment obligations. . . . *[E]very* fraudulent statement or admission [plaintiff] alleges arose out of a single transaction."]

In sum, the allegations in the proposed amended complaint support only one reasonable conclusion: An should have suspected wrongdoing when he learned of the project's significant delays in 2017. Further, An failed to allege specific facts showing he was reasonably diligent in investigating the alleged wrongdoing or that even with greater diligence he would not have been able to discover the wrongdoing. The delayed discovery rule does not apply, and An has not shown he can allege any additional facts to cure the legal defects of his complaint.[7]

## DISPOSITION

The judgment of dismissal is affirmed. The Americana defendants are to recover their costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.          SEGAL, J.

---

[7] Because we find An cannot allege facts to support application of the delayed discovery rule, we do not address his additional argument the demurrer to the breach of contract and rescission causes of action should not have been sustained for failure to state a claim.